# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADONIS CONSTANTINOVICI,<br><br>Petitioner,<br><br>v.<br><br>PAMELA BONDI, ATTORNEY GENERAL et al.,<br><br>Defendants. | Case No.: 3:25-cv-02405-RBM-AHG<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 8 U.S.C. § 2241**<br><br>[Doc. 1] |

Pending before the Court is Petitioner Adonis Constantinovici's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") (Doc. 1). Along with his Petition, Petitioner filed an Emergency Motion or Request for Expedited Handling Under 28 U.S.C. § 1657 with Reference to 28 U.S.C. Ch. 153 ("Motion to Expedite") (Doc. 2) and an Emergency Motion for Temporary Restraining Order Under FRCP 65(b) and Preliminary Injunction Under FRCP 65(a) ("TRO Motion") (Doc. 3). Respondents filed a Response ("Response") (Doc. 8), and Petitioner filed a Reply ("Reply") (Doc. 9).

The Court held a hearing on October 1, 2025. For the reasons set forth below, the Petition (Doc. 1) is **GRANTED**.

1

# I. BACKGROUND

## A. Factual Background

Petitioner, formerly a citizen of Romania, is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Otay Mesa Detention Center in San Diego, California. (Doc. 1 ¶ 16.)[1] Petitioner states he is "currently stateless" and that he "lost his Romanian citizenship in 1987 when he illegally crossed the border from Romania to Hungary." (*Id*. ¶ 2.) On April 17, 2001, an immigration judge ordered Petitioner removed. (*Id*.; *see* Doc. 13-1 at 1.) The order of removal became final on May 17, 2001. (Doc. 1 ¶ 3.) On May 18, 2001, Petitioner was released under an order of supervision pursuant to 8 C.F.R. § 241.4(e) (the "Order of Supervision"). (*Id*. ¶ 4; *see* Doc. 1-3 at 1–4.)

On February 10, 2010, Petitioner was arrested for a DUI. (*Id*. ¶ 5; Doc. 1-3 at 2.) Shortly after he was released from county jail, Petitioner was re-detained and taken into ICE custody. (Doc. 1 ¶ 5.) On October 7, 2010, Petitioner was released on his existing Order of Supervision. (Doc. 1-3 at 1–2; Doc. 8-1, Declaration of Denise E. Barroga ["Barroga Decl."] ¶ 5.) The record reflects that Petitioner was re-detained by ICE at some point between October 7, 2010 and November 2010. (*See* Doc. 1 ¶¶ 6, 10; Doc. 8-1 [Barroga Decl.] ¶¶ 5–6 (stating Petitioner was released on an Order of Supervision on October 7, 2010 and on August 23, 2011).) "On November 18, 2010, while detained by immigration, [Petitioner] filed a Motion to Reopen and Reconsider, Freedom of Information Act Request Regarding Former Counsel and a Motion for Stay of Removal." (Doc. 1 ¶ 6; *see* Doc. 13-1 at 3.) An immigration judge denied the motions on December 8, 2010. (Doc. 1 ¶¶ 7–8; *see* Doc. 13-1 at 2–4.) Petitioner appealed the denial, which the Board of Immigration Appeals denied on February 14, 2011. (Doc. 1 ¶ 9; Doc. 8-2 at 4.)

On or about August 23, 2011 (Doc. 8-1 [Barroga Decl.] ¶ 6), Petitioner was released from ICE custody on his existing Order of Supervision "because it was determined that he

---

[1] The Court cites the CM/ECF electronic pagination unless otherwise noted.

had demonstrated to ICE's satisfaction that his removal would not occur in the reasonably foreseeable future." (Doc. 1 ¶ 10.) According to Petitioner, it was "also necessarily determined at that time that [he] did not present an ongoing danger or a flight risk." (*Id.* ¶ 11 (citing 8 C.F.R. § 241.4(e)(2)–(6).) Petitioner "was required to complete annual (and often more frequent) check ins with ICE through August 2025." (*Id.* ¶ 13.) Petitioner's most recent check-in, prior to his arrest, was in July 2025 where he was informed that his assigned immigration officer was unavailable. (*Id.* ¶ 14.)

On August 21, 2025, while attending a check-in required under the conditions of his release, Petitioner was re-detained by ICE. (*Id.* ¶ 15.) Petitioner was detained pursuant to an arrest warrant issued on a DHS Form I-200. (Doc. 8-2 at 3; *see* Doc. 13-1 at 7.) On September 17, 2025, 27 days after Petitioner was arrested and two days after filing this lawsuit, Deportation Officer M. Aguilar served Petitioner with a Notice of Revocation of Release stating the following:

> This letter is to inform you that your order of supervision has been revoked, and you will be detained in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case.
>
> ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you. On April 17, 2001, you were ordered removed to Romania by an authorized U.S. DHS/DOJ official. Your case is under current review for removal to Romania.
>
> Based on the above, and pursuant to 8 C.F.R. § 241.4 / 8 C.F.R. § 241.13, you are to remain in ICE custody at this time. You will promptly be afforded an informal interview at which you will be given an opportunity to respond to the reasons for the revocation. You may submit any evidence or information you wish to be reviewed in support of your release. If you are not released after the informal interview, you will receive notification of a new review, which will occur within approximately three months of the date of this notice.

(Doc. 13-1 at 5–6.) Petitioner currently remains in ICE custody.

B. **Procedural History**

On September 15, 2025, Petitioner filed the instant Petition challenging the lawfulness of his ongoing detention against Respondents Pamela Bondi, Kristi Noem, Department of Homeland Security ("DHS"), Todd M. Lyons, Marcos Charles, Patrick Divver, Christopher J. LaRose, and ICE (collectively, "Respondents" or the "Government"). (Doc. 1 ¶¶ 33–40.) The next day, Petitioner filed the Motion to Expedite and the TRO Motion. (Docs. 2, 3.) On September 17, 2025, the Court issued an Order Requiring Response to Habeas Corpus Petition and the TRO Motion. (Doc. 5.) Respondents filed a Response in Opposition to Petitioner's Habeas Petition and Application for Temporary Restraining Order on September 19, 2025 ("Response"). (Doc. 8.) On September 21, 2025, Petitioner filed a Reply ("Reply"). (Doc. 9.)

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Under 28 U.S.C. § 2241, a district court has the authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## III. DISCUSSION

Petitioner challenges his detention as unlawful based on the following grounds: (1) Respondents failed to comply with 8 C.F.R. § 241.13 prior to re-detaining him and revoking his release under the Order of Supervision; (2) such non-compliance violated his due process rights; and (3) his continued detention violates the Immigration & Nationality Act ("INA"), 8 U.S.C. §§ 1231(a)(1)–(3), and the Fifth Amendment Due Process Clause

because he has accrued more than six months of post-removal detention and the Government has failed to rebut his prior showing that his removal is not reasonably foreseeable (Doc. 9 at 6–8 (citing *Zadvydas*, 533 U.S. at 699).)

Respondents do not respond to Petitioner's arguments concerning ICE's regulatory violations. Rather, Respondents argue Petitioner is properly detained under 8 U.S.C. § 1231(a) because "ICE revoked his Order of Supervision for the purpose of executing his final order of removal." (Doc. 8 at 5–6.) Respondents also argue that Petitioner's claims are jurisdictionally barred under 8 U.S.C. § 1252(g). (*Id*. at 3–4.) As this Court has an obligation to "determine that [it has] jurisdiction before proceeding to the merits" of any case, it will first address Respondents' jurisdictional arguments. *Lance v. Coffman*, 549 U.S. 437, 439 (2007). For the reasons discussed below, the Court finds it has jurisdiction to consider the Petition pursuant to 28 U.S.C. § 2241. The Court further concludes that ICE violated Petitioner's due process rights in revoking Petitioner's release without complying with the applicable statutory and regulatory provisions that afford fundamental procedural safeguards to noncitizens.[2]

**A.  Jurisdiction**

**1.  Habeas Corpus**

"The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser*, 411 U.S. at 484. "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)).

In the Petition, Petitioner seeks his immediate release from ICE custody, which he contends violates the Fifth Amendment Due Process Clause of the U.S. Constitution and

---

[2] Having reached this conclusion, the Court need not address Petitioner's remaining arguments.

the Administrative Procedures Act, 5 U.S.C. § 706(2)(A).  (Doc. 1 ¶¶ 91–105.)  Because Petitioner is in custody under the authority of the United States, and he claims he is being detained in violation of federal law, Petitioner has properly invoked the Court's habeas jurisdiction pursuant to 28 U.S.C. § 2241.

### 2. Judicial Review under the INA

Respondents argue that the Court lacks jurisdiction over Plaintiff's claims pursuant to 8 U.S.C § 1252(g). (Doc. 8 at 3–4.)  This statutory bar against judicial review precludes this Court from exercising jurisdiction over the Government's decision to "commence proceedings, adjudicate cases, or execute removal orders against any alien."  8 U.S.C § 1252(g).  However, the Supreme Court has narrowly interpreted § 1252(g) as applying "only to three discrete actions that the Attorney General may take: [his] 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'"  *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis omitted) (quoting 8 U.S.C. § 1252(g)); *see Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137 (W.D.N.Y. 2025) (noting courts have "distinguished between challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not.").

Here, Petitioner does not challenge the legitimacy of his April 2001 order of removal or ICE's discretionary authority to decide "when" or "whether" to execute such removal order.  *See Rauda v. Jennings*, 55 F.4th 773, 777 (9th Cir. 2022) (quoting *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 297 (3d Cir. 2020)).  Rather, Petitioner challenges his present detention as unlawful, as well as the Government's authority to re-detain him under the post-removal detention statute without notice and an opportunity to respond. Accordingly, this Court has jurisdiction to consider Petitioner's claims.  *See Zadvydas*, 533 U.S. at 687 (confirming that 28 U.S.C. § 2241 confers jurisdiction on the federal courts to hear cases about the detention of individuals with final removal pending their removal).

### B. Due Process

Petitioner challenges his detention as unlawful based on ICE's decision to revoke

his release without providing the required notice and opportunity to be heard. (Doc. 9 at 3–5.) Petitioner's claims therefore implicate the Due Process Clause.

The Due Process clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. Due process rights extend to noncitizens present in the United States, including those subject to final removal orders. *Zadvydas*, 533 U.S. at 693–94; *see Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The fundamental requirements of procedural due process are that a person be afforded notice and opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Section 1231 governs the arrest and detention of noncitizens who have been ordered removed. *See* 8 U.S.C. § 1231. This statute directs the Attorney General of the United States to effect the removal of a noncitizen from this country "within a period of 90 days," also known as the "removal period." § 1231(a)(1). It also authorizes detention of the noncitizen during this removal period. § 1231(a)(2). However, once that time passes and after "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute," and the noncitizen must be released. *Zadvydas*, 533 U.S. at 699–700; *see* 28 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the [90-day] removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.").

The Government has promulgated regulations in the Code of Federal Regulations concerning the release of noncitizens who are subject to a final removal order. *See* 8 C.F.R. § 241.4; 8 C.F.R. § 241.13. These regulations also govern the revocation of such noncitizens' release. Both 8 C.F.R. § 241.4(l)(1) and § 241.13(i)(3) provide that, upon revocation of release, the noncitizen "will be notified of the reasons for revocation of his or her release," and will be given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for

revocation stated in the notification."

At the hearing, Respondents suggested revocation procedures were not required when revoking Petitioner's release because he was re-detained pursuant to § 241.4(l)(2) and the notice and informal interview requirements are set forth in § 241.4(l)(1).[3] Respondents did not provide any legal support for their interpretation of § 241.4(l) in their briefing or during the hearing. District courts have consistently rejected this argument and held that § 241.4(l)(1)'s procedural requirements apply equally to revocation of a noncitizen's release pursuant to § 241.4(l)(2). *See Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *5 (E.D. Cal. Sept. 5, 2025) ("The Court agrees with those decisions that the notice and interview requirements apply to anyone whose supervision has been revoked pursuant to 8 C.F.R. § 241.4(l)(1)."); *Ceesay*, 781 F. Supp. 3d at 164 (rejecting such interpretation of § 241.4 as it would mean "a noncitizen suspected of violating a condition of release gets more process than a noncitizen . . . who has met his obligations to report."); *Rombot v. Souza*, 296 F. Supp. 3d 383, 387 (D. Mass. 2017) (finding an informal interview was required under §§ 241.4 and 241.13 where ICE intended to enforce the petitioner's removal order but nothing in the record showed it conducted such an interview); *M.Q. v. United States*, 776 F. Supp. 3d 180, 187, 190, 190 n.1 (S.D.N.Y. 2025) (holding § 241.4(l) required ICE to provide petitioner, who had not violated conditions of release, with notice and an informal interview).

The Court agrees with these courts' decisions. "[T]he Government has significant discretion to enforce the immigration laws and . . . to revoke an Order of Supervision." *Diaz*, 2025 WL 2581575, at *7 (quoting *Zhu v. Genalo*, No. 1:25-CV-06523 (JLR), 2025 WL 2452352, at *6–7 (S.D.N.Y. Aug. 26, 2025)). However, "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017); *see M.S.L. v. Bostock*, Civ. No.

---

[3] Hereinafter, all citations are to Title 8 of the Code of Federal Regulations unless otherwise noted.

6:25-cv-01204-AA, 2025 WL 2430267, at *8 (D. Or. Aug. 21, 2025) ("Although ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody, they have a protected liberty interest in remaining out of custody.") (quoting *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099, at *12 (D. Ariz. Aug. 11, 2025)).

Both 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 were intended to "provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release . . . ." *Santamaria Orellana v. Baker*, Civil Action No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025). Under the Government's proposed interpretation of this regulation, noncitizens re-detained for violating a condition of release would be entitled to more due process than noncitizens, like Petitioner, who have otherwise complied with their obligations. *See Ceesay*, 781 F. Supp. 3d at 164 ("Under the government's interpretation of the regulation, someone arrested based on the revocation of an order of supervision not related to a violation of conditions might spend three months or more in custody before getting *any* opportunity to contest the person's detention.") (emphasis in original); *Zhu*, 2025 WL 2452352, at *7 ("The Government's interpretation of paragraph 241.4(l) would . . . result in imbalanced procedural safeguards for noncitizens" re-detained under § 241.4(l)(2)). Moreover, ICE's own statements in the Notice of Revocation also conflict with Respondents' argument as the Notice incorporates § 241.4(l)'s procedural requirements and states that Petitioner would "promptly be afforded an informal interview." (Doc. 13-1 at 5.) Even if ICE has discretion to revoke a noncitizen's release under § 241.4(l)(2), the noncitizen's liberty interests are still implicated by his or her re-detention. The Court therefore finds such procedural requirements apply to any noncitizen whose supervision is revoked under § 241.4(l), including Petitioner. *See Mathews v. Diaz*, 426 U.S. 67, 77 (1976) ("Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to [the Fifth Amendment's] constitutional protection.").

### C. Violations of the INA and its Regulations

Petitioner asserts that "[t]he central defect in this case is that ICE failed to comply with its own governing regulations." (Doc. 9 at 3.) Specifically, Petitioner contends that ICE failed to: (1) provide him with notice that his Order of Supervision was revoked; (2) conduct an informal interview or afford Petitioner an opportunity to be heard; and (3) sufficiently demonstrate the changed circumstances that render his removal significantly likely in the reasonably foreseeable future. (*Id*. at 4.)

As previously noted, both regulations require that "upon revocation of release," the noncitizen "be notified of the reasons for revocation of his or her release," and be afforded "an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1); *id*. § 241.13(i)(3).

It is well-established that government agencies are required to follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010) ("It is a well-known maxim that agencies must comply with their own regulations.") (quoting *Ramon–Sepulveda v. INS*, 743 F.2d 1307, 1310 (9th Cir. 1984)). "A court's duty to enforce an agency regulation is most evident when compliance with the regulation is mandated by the Constitution or federal law." *Sanchez v. Barr*, 919 F.3d 1193, 1196 (9th Cir. 2019) (Paez, J., concurring) (quoting *United States v. Caceres*, 440 U.S. 741, 749 (1979)). Numerous district courts, including courts in the Ninth Circuit, "have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." *Rokhfirooz v. Larose*, Case No.: 25-cv-2053-RSH-VET, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025) (granting a habeas petition and ordering the petitioner's release where the Government failed to comply with § 241.13); *see Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (finding petitioner was likely to succeed on his unlawful re-detention claim because "there is no indication that an informal interview was provided"); *Rombot*, 296 F. Supp. 3d at

387–88 (holding that ICE's failures to follow the revocation procedures in § 241.4 rendered the petitioner's detention unlawful); *Ceesay*, 781 F. Supp. 3d at 164 ("[B]ecause ICE did not follow its own regulations in deciding to redetain [the petitioner], his due process rights were violated, and he is entitled to release.").[4]

In this case, the record before the Court shows that Petitioner was not given any notice of the reasons for his re-detention prior to his arrest or an opportunity to respond to such reasons. First, despite both regulations requiring notice "*upon revocation*," ICE did not provide Petitioner with a Notice of Revocation of Release until almost a month after he was taken into custody and two days after he filed this lawsuit. 8 C.F.R. § 241.4(l)(1) (emphasis added); *id.* § 241.13(i)(3). The record therefore establishes that Petitioner did not receive notice at any point before, or at the time of, his arrest. *See M.S.L.*, 2025 WL 2430267, at *11 (holding ICE failed to provide the petitioner a timely notice of revocation where it was issued "after nearly a month in detention.").

In the same vein, an informal interview is required "*promptly* after [the noncitizen's] return to Service custody." 8 C.F.R. § 241.4(l)(1) (emphasis added); § 241.13(i)(3). Nothing in the record indicates that Petitioner was provided with an interview in connection with the revocation of his release or otherwise afforded an opportunity to respond to the reasons for his re-detention. At the hearing, Respondents stated that ICE planned to provide Petitioner with an interview within two days of the hearing—nearly 6 weeks after his arrest. This cannot reasonably be construed as a "prompt" informal interview. *See Hoac*, 2025 WL 1993771, at *4 (finding petitioner was likely to succeed on his unlawful

---

[4] The Court was able to identify only one decision where a district court did not grant the petitioner's release in a similar immigration habeas proceeding. *See Medina v. Noem*, Case No. 25-cv-1768-ABA, 2025 WL 2306274, at *12 (D. Md. Aug. 11, 2025). However, the court in *Medina* denied the petition without prejudice because the petitioner had "not pointed to authority showing that the remedy for a violation of [§ 241.4] (if such a violation has occurred) is release from detention." *Id.* at *11. Unlike in *Medina*, Petitioner in this case has. (*See* Doc. 9 at 3–6.)

re-detention claim as "there [was] no indication that an informal interview was provided").

Additionally, to the extent that Petitioner was subject to 8 C.F.R. § 241.13, as Petitioner argued in his briefing and at argument, the revocation of his release violated those regulations as well. Petitioner claims that ICE failed to determine "there is a significant likelihood that [he] may be removed in the reasonably foreseeable future," as required under 8 C.F.R. § 241.13(i)(3). (Doc. 9 at 4–5.) At the hearing, Respondents' counsel claimed that ICE's documented decision to revoke Petitioner's release was contained in the arrest warrant. The arrest warrant, issued on DHS Form I-200, states "there is probable cause to believe [Petitioner] is removable from the United States. . . . based upon the pendency of ongoing removal proceedings against [Petitioner]. (Doc. 13-1 at 7.) But, as counsel for Petitioner noted, Petitioner's removal proceedings have not been ongoing since 2001 when he was ordered removed. Apart from the arrest warrant, there is no evidence of ICE's decision to revoke Petitioner's release, let alone evidence that ICE determined Petitioner's removal was significantly likely in the reasonably foreseeable future based on any "changed circumstances." *See* 8 C.F.R. § 241.13(i)(2). The Court therefore finds that, under any of the potential bases for revocation, Petitioner's re-detention violated the regulations designed to afford him due process.

ICE's failure to follow such regulations thereby also violated Petitioner's constitutional due process rights. *See Diaz*, 2025 WL 2581575, at *7 ("DHS's failure to follow its own procedural regulations may constitute a due process violation."); *M.S.L.*, 2025 WL 2430267, at *11 ("More fundamentally, ICE's failure to provide Petitioner with a timely Notice of Revocation or conduct an informal interview until nearly a month after taking her into custody is a grave violation of Petitioner's due process rights in that they deprived her both of meaningful notice and an opportunity to be heard."); *Santamaria Orellana*, 2025 WL 2444087, at *8 ("[T]here is absolutely no record of the decision to revoke [the petitioner's] release . . . which reveals an even more significant due process problem because no one . . . knows with any degree of certainty what legal and factual basis was relied upon in making the determination, which hinders any meaningful

challenge to the decision."); *Grigorian v. Bondi*, CASE NO. 25-CV-22914-RAR, 2025 WL 2604573, at *6 (S.D. Fla. Sept. 9, 2025) ("Although [the petitioner's release] was subject to § 241.4(l) and not § 241.13(i), the Court nevertheless finds that ICE failed to provide [him] with a meaningful opportunity to contest the revocation of his [order of supervision] through an informal interview [in violation of] both ICE's own regulations and the Due Process Clause of the Fifth Amendment.").

Accordingly, the Petition is **GRANTED**. In light of the disposition herein, the Court declines to address the remaining grounds in the Petition for seeking release.

## IV.    CONCLUSION

Based on the foregoing reasons, the Petition is **GRANTED**. Accordingly:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to his preexisting Order of Supervision.
2. Petitioner's Motion to Expedite (Doc. 2) and Motion for TRO (Doc. 3) are therefore **DENIED AS MOOT**.

**IT IS SO ORDERED**.

DATE: October 10, 2025

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE